In re Gregory Bernard BARWICK, Irene
Hearn Barwick, Debtors.

Sarah Pauline MERRYWELL, Plaintiff,

v.

Gregory Bernard BARWICK and Irene
Hearn Barwick, Defendants.

Bankruptcy No. 81–01736–R.

Adv. No. 82–0002–R.

United States Bankruptcy Court,
E.D. Virginia.

Nov. 8, 1982.

Bruce A. Clark, Jr., Hopewell, Va., for plaintiff.

Timothy J. Hauler, Colonial Heights, Va., for defendants.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

This matter comes on upon the filing by Sarah Pauline Merrywell (Merrywell) to determine the dischargeability of a debt owed her by Gregory B. Barwick and Irene H. Barwick, the debtors herein. After hearing and upon the submission of briefs this Court makes the following determination.

## STATEMENT OF THE FACTS

In 1976 Mrs. Merrywell's husband was ill and incapacitated. Mrs. Merrywell, who had little or no experience in financial matters, needed financial advice and the local chapter of the Veteran of Foreign Wars referred one of its service officers, Gregory Barwick, to her for assistance. Mr. Barwick advised Mrs. Merrywell concerning her finances and investments both during the period of her husband's illness and the period immediately following his death.

In order to facilitate handling her finances Mrs. Merrywell testified that at Mr. Barwick's request she granted him a power of attorney. Mrs. Merrywell and her husband accumulated approximately 240 war bonds during their marriage and Mr. Barwick suggested that she liquidate the bonds and put the funds in certificates of deposit. She testified that with Mr. Barwick's assistance she went to the Federal Reserve Bank in Richmond and cashed in the bonds. She said she called Mr. Barwick once she received a check for the proceeds of the bonds and Mr. Barwick took the check and represented to her he would place the funds in certificates of deposit. Merrywell never saw the certificates; however, twice Mr. Barwick gave her $600 which he told her was interest the bonds had accrued.

In early 1979, after her husband's death, Mrs. Merrywell decided to move to Alaska to live with her son. She testified she asked Mr. Barwick at that time to give her all of the papers he was keeping for her including the certificates of deposit. He delivered the papers, but failed to tell Mrs. Merrywell that no certificates of deposit were among the papers. After sorting through the papers and discovering the certificates of deposit were not there she called Mr. Barwick. Mr. Barwick told her that he had used the certificates as collateral for a business deal which had soured and that he had lost the entire amount of the collateral. Shortly thereafter, as Mrs. Merrywell was preparing to leave for Alaska, Mr. Barwick executed a promissory note in favor of Mrs. Merrywell for $20,000 on account of the

monies he had lost. Jenny Merrywell, Mrs. Merrywell's daughter-in-law, was present at the meeting between Mrs. Merrywell and Mr. Barwick at which time Mr. Barwick told Mrs. Merrywell he had used the certificates as collateral on an unauthorized project and had forfeited the money. She corroborated Mrs. Merrywell's testimony that Mr. Barwick then executed a promissory note at that time.

Mr. Barwick's testimony at trial deviated sharply from Mrs. Merrywell's testimony. Mr. Barwick testified that Mrs. Merrywell obtained $45,000 from the liquidation of the war bonds. He said that she received the funds by check and deposited those funds in her account at the Bank of Southside Virginia. Subsequently, prior to February 1, 1978 she transferred $45,000 to Barwick for Barwick to put in his name in his own bank. Barwick said this transfer was a guise to avoid inheritance taxes. Mr. Barwick further testified that he received the $20,000 from Mrs. Merrywell as a loan and that he returned all the other monies which she had asked him to put in his bank account. He testified that he used the $20,000 loan as an investment in a business venture with an individual named Marion Stroud. Stroud filed a bankruptcy petition for his business and Mr. Barwick lost this investment.

It appears clear that Mr. Barwick either used his power of attorney to obtain access to Mrs. Merrywell's funds or deposited her funds to his own accounts. Without permission he obtained $20,000 of her money and invested in a business venture with Marion Stroud. Although he may have intended to repay Merrywell from the earnings of the business, the business soured and he was unable to repay her. This Court finds unworthy of belief Mr. Barwick's testimony that Mrs. Merrywell transferred funds to him to avoid estate taxation and authorized his personal use of the funds.

## CONCLUSIONS OF LAW

In her two count complaint, Mrs. Merrywell alleges first Mr. Barwick engaged in a fraud upon her to induce her to entrust $20,000 to him. Second, she alleges that Mr. Barwick committed embezzlement, fraud and defalcation while acting in a fiduciary capacity.

11 U.S.C. § 523(a)(4) provides in pertinent part "[t]hat a discharge ... does not discharge an individual debtor from any debt ... (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny ...." A debtor, therefore, may not discharge in bankruptcy a debt based on fraud or defalcation which arose while he was acting in a fiduciary capacity, or embezzlement or larceny whether or not he was acting in a fiduciary capacity. See *Collier on Bankruptcy*, ¶ 523.14 (15th ed. 1981). This Court must construe the word "fiduciary" narrowly in terms of a technical or express trust rather than an implied one. *In re Lilly*, 1 B.R. 773, 774 (Bkrtcy.Md. 1980). The trust must have existed independent and prior to the incident which created the debt. *In re Murphy*, 9 B.R. 167, 173 (Bkrtcy.E.D.Va.1981). A trust imposed *ex maleficio* is insufficient to give rise to the existence of a fiduciary relationship for the purposes of bankruptcy law. *In re Paley*, 8 B.R. 466, 469 (Bkrtcy.E.D.N.Y.1981). See also, *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333, 55 S.Ct. 151, 153, 79 L.Ed. 393 (1934); *Central Hanover Bank & Trust Co. v. Herbst*, 93 F.2d 510, 511 (2nd Cir. 1937). "It is the character of the debt relationship and not its form that determines whether a fiduciary 'trust' relationship exists." *Paley* at 469.

Although the concept of fiduciary is a question of federal law, state law plays an important role in determining whether a case involves an expressed trust. *In re Angelle*, 610 F.2d 1335, 1341 (5th Cir.1980).[1] Courts routinely conclude that technical trustees act in a fidiciary capacity within the meaning of 11 U.S.C. § 523(a)(4). *Collier* at ¶ 523.14. Virginia courts also conclude that persons acting under powers of

---

1. If state law were the sole measure of whether a trust existed for the purposes of 11 U.S.C. § 523(a)(4), then states through enlarging the area of excepted liabilities could thwart the purposes of the Bankruptcy Act. *In re Harrill*, 1 B.R. 76, 81 (Bkrtcy.E.D.Tenn.1979).

attorney are technical trustees and serve in a fiduciary relationship to their principals. *Creasy v. Henderson*, 210 Va. 744, 173 S.E.2d 823, 828 (1970). *See also, Broaddus v. Gresham*, 181 Va. 725, 26 S.E.2d 33 (1943). Mr. Barwick not only advised and counseled Merrywell regarding her general financial matters, but he also obtained a general power of attorney to deal with Mrs. Merrywell's assets. It is clear that the grant of a power of attorney created an express trust through which Mr. Barwick and Mrs. Merrywell entered into a fiduciary relationship.

Mrs. Merrywell is not required to show any intentional wrongdoing by Mr. Barwick in order to establish that the debt was created by a defalcation. *Central Hanover Bank & Trust Co.* at 511; *In re Kawczynski*, 442 F.Supp. 413, 418 (W.D.N.Y. 1977). Defalcation includes innocent defaults in which the fiduciary fails to fully account for money he received in his fiduciary capacity. *Central Hanover Bank & Trust Co.* at 511. *See also, In re Byrd*, 15 B.R. 154, 156 (Bkrtcy.E.D.Va.1981). Although an innocent defalcation by Mr. Barwick as a fiduciary in the instant case would have been sufficient to render this debt nondischargeable, it is clear Mr. Barwick's actions were not innocent. Mr. Barwick intentionally misused his position of trust with Mrs. Merrywell to obtain $20,000 to use for his personal affairs. When his investment soured, he was unable to return to Merrywell the funds he wrongfully and secretly took from her account.

Although a defalcation may result from mere negligence or mistake, embezzlement must arise out of a known breach of duty. *Murphy* at 175. Embezzlement is defined as "... [t]he fraudulent appropriation of property by a person to whom such property has been intrusted, or into whose hands it has lawfully come. It differs from larceny in the fact that the original taking of the property was lawful, or with the consent of the owner ...." *Moore v. United States*, 160 U.S. 268, 16 S.Ct. 294, 40 L.Ed. 422 (1895). An embezzlement need not have occurred while the debtor was acting in a fiduciary capacity for the purposes of 11 U.S.C. § 523(a)(4); therefore, any debt resulting from embezzlement may be rendered nondischargeable. *Collier* at ¶ 523.14. Mr. Barwick's conduct presents this Court with a classic case of embezzlement. Mr. Barwick lawfully received the $20,000 from Mrs. Merrywell and placed the funds in certificates of deposit. He then used his power of attorney to withdraw the funds from the certificates and invest the funds for his own personal gain without the consent or knowledge of Mrs. Merrywell. Only after he lost the money through a poor investment and only after she specifically asked for the certificates of deposit papers did he reveal to her the loss of the funds. After he was caught, Mr. Barwick executed a note in favor of Mrs. Merrywell for $20,000, the amount he lost in the investment.[2]

For the above reasons, this Court concludes the debt of Mr. Barwick to Mrs. Merrywell is nondischargeable in bankruptcy. No evidence was proffered at the trial in this matter indicating Mrs. Barwick knew of or was involved in any of the transactions described in the statement of facts. The complaint should be dismissed as to her.

An appropriate Order will issue.

## ORDER

Sarah Pauline Merrywell, a creditor herein, having commenced an adversary proceeding for the determination of the dischargeability of the debtors' debt to said creditor and the issues having been duly tried and for the reasons contained in the Memorandum Opinion, it is

---

**2.** The nature of the debt was not changed by Barwick's execution of the note. "The acceptance of a note from one who procures a sum of money by fraud, as an evidence of the debt thereby created, after the fraud has been discovered, does not take the debt out of the operation of the above quoted provision of the Bankruptcy Act [11 U.S.C. § 35.]" *Arnold v. Employers Insurance of Wausau*, 465 F.2d 354, 356 (10th Cir., 1972), quoting *United States Credit Bureau v. Manning*, 147 Cal.App.2d 558, 305 P.2d 970, 972 (1957).

ORDERED and ADJUDGED that Sarah Pauline Merrywell have judgment against Gregory Bernard Barwick in the sum of $20,000 together with interest thereon from the date of this Order, and it is further

ORDERED, ADJUDGED, and DECREED that the debt of Gregory Bernard Barwick to Sarah Pauline Merrywell in the sum of $20,000 be and it hereby is determined to be nondischargeable, and it is further

ORDERED, ADJUDGED, and DECREED that the complaint filed herein by Sarah Pauline Merrywell to determine the dischargeability of a debt allegedly owed her by Irene Hearn Barwick be and is hereby denied.

The Clerk is directed to forward a copy of this Order to counsel of record.