**In re Jerry G. DAVIS, d/b/a Jerry Davis Construction Co., Debtor.**

**Lawrence D. RISHELL and Susan Rishell, Plaintiffs,**

v.

**Jerry G. DAVIS, Defendant.**

**Bankruptcy No. 85–07070.
Adv. No. 85–9081.**

United States Bankruptcy Court,
N.D. Florida,
Tallahassee Division.

Feb. 7, 1990.

**348**

Robert Hinkle and Rick Polston, Tallahassee, Fla., for plaintiffs.

Michael A. Reichman, Monticello, Fla., for defendant.

W. Kirk Brown, Tallahassee, Fla., Trustee.

## MEMORANDUM OPINION ON CREDITOR'S CLAIM OF NON–DISCHARGEABILITY

LEWIS M. KILLIAN, Jr., Bankruptcy Judge.

THIS MATTER· came on to be heard upon a complaint to determine dischargeability of a claim alleged to be due the plaintiffs from the debtor. The complaint is based on Sections 523(a)(2)(A) and 523(a)(4) of the Bankruptcy Code, with accompanying state claims for fraud and civil theft. This court has jurisdiction pursuant to 28 U.S.C. § 1334. Many of the pertinent facts have been stipulated to by the parties. Upon consideration stipulation, record and evidence adduced at trial, the Court makes the following findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

### FINDINGS OF FACT

On August 6, 1984, plaintiffs, Lawrence D. Rishell and his wife Susan Rishell ("the Rishells") entered into a Contract Agreement with the defendant/debtor Jerry G. Davis ("Davis"). Davis contracted to construct a 2,285 square foot residence on a lot owned by the Rishell's for the sum of $74,500. On November 20, 1984, the Rishells, Davis and Industrial National Bank ("INB") entered a Construction Loan Agreement under which INB agreed to loan the Rishells up to $77,000 for the construction of the residence by Davis. On November 26, 1984, the Rishells and Davis entered into a revised construction contract wherein Rishells would complete certain tasks of the construction. Under the revised contract, Davis would receive $68,-825, and the Rishells would be responsible for specified portions of the construction. Davis was to receive payment, and finance the construction through draws on the construction loan between the Rishells and INB. Pursuant to the Construction Loan agreement, draws were to be disbursed in proportion to completion of construction. Proof of completion was to be evidenced to INB's satisfaction by site inspection or affidavit of the contractor, Davis.

Davis began construction of the residence on or about November 26, 1984. He purchased materials and obtained the services of various subcontractors and laborers. On December 7, 1984, Davis signed and delivered to Charles Johnson, a vice-president at INB, an affidavit setting forth the progress of the construction to support a draw request. Included as a part of the affidavit is a statement regarding the outstanding debt owed to suppliers, subcontractors and laborers. Davis admits that the information in the affidavit was incomplete and therefore untrue, there being debts outstanding that he did not state in the affidavit. However, at the time Davis signed the affidavit, he did not know the actual amount of outstanding payables and no evidence was presented to establish that amount. Davis then received a draw in the amount of $13,100 from the construction loan account held by INB.

Davis received two other draws from the Rishell construction loan account on December 17, 1984, and December 28, 1984 in the respective amounts of $10,010 and $18,-480. INB did not request affidavits for these draws, and none were given. The total funds received by Davis from the Rishells' loan account amounted to $41,590. The funds from these draws were transferred directly by INB from the loan account into Davis' general business checking account and co-mingled with other funds in the account. Davis used the funds in that account to pay his various business expenses. In so doing, Davis used portions of the Rishells' funds to pay expenses unrelated to the construction of their residence. Neither the construction loan agreement between the Rishells and INB, nor the construction contract between

Davis and the Rishells specifically required Davis to keep a separate account for the Rishell draws, nor to apply those proceeds solely to expenses relating to the Rishells' house.

On January 18, 1985, Davis requested another draw. It became known to INB that Davis was experiencing financial difficulties, and had significant unpaid bills with suppliers. INB then refused to disburse additional funds to him. Due to Davis' failure to pay subcontractors and materialmen, the Rishells directed Davis to stop construction on their residence. The Rishells then purchased materials, hired subcontractors, and satisfied liens filed against their property so that construction could continue. The funds for these efforts were taken from the INB loan account, and from the Rishells' personal funds.

By agreement with the Rishells, Davis resumed work on the residence, and satisfied various debts to subcontractors, materialman, and laborers by exchanging his own labor, and by transferring a mortgage receivable he owned. Together with the payments from the loan proceeds made prior to the stoppage from Davis satisfied a total of $44,966.45 in expenses related to the project. In addition, Davis provided his own labor on the Rishells' residence, contributing approximately three hundred sixty (360) hours of uncompensated work. The final cost to complete construction of the residence was $14,145.51 more than the contract price agreed upon between Davis and the Rishells, the cost of which was paid by the Rishells. Industrial National Bank later reimbursed the Rishells half of the excess cost due to their distribution of funds from the Rishell's loan account without obtaining affidavits from Davis on the December 17, and December 28 draws.

## CONCLUSIONS OF LAW

### I. Fraud and Misrepresentation

■ Plaintiffs claim that Davis' false statements on the affidavit signed by him on December 7, 1984, constituted the obtaining of money through actual fraud thus entitling them to damages and an exception to discharge pursuant to § 523(a)(2)(A). We find insufficient evidence to warrant a finding of fraud and non-dischargeability regarding that affidavit. Non-dischargeability due to fraud is a federal question, therefore a federal rather than state definition of fraud is to be used. *In re Mettetal*, 41 B.R. 80, 86 (Bkrtcy.D.Tenn.1984).

■ To find non-dischargeability for fraud, the plaintiff must prove:

1) the debtor made a false representation,

2) the representation was made with the purpose and intention of deceiving the creditor,

3) the creditor relied on the representation,

4) that such reliance was reasonable,

5) and that the creditor was damaged as a direct result of the representation.

*In re Hunter*, 780 F.2d 1577, 1579 (11th Cir.1986). The burden to prove fraud is on the plaintiff and must be proven by clear and convincing evidence. *Id.*

In this case, the plaintiffs have failed to show intent, reliance, or directly resulting damages. Davis admits that false statements were given on the December 7, 1984 affidavit. However, sufficient evidence was not given to prove that Davis knew his representations on the December 7 affidavit were false, or that he made those representations with the purpose or knowledge that such would injure the plaintiffs. Davis even made efforts to mitigate damages caused by his confused business affairs by satisfying liens through his own labor, and the transfer of a mortgage. The plaintiffs failed to prove that Davis intended to deceive them, and therefore fail to meet the intent required for a finding fraud.

Testimony from the bank's vice-president tends to refute any claim of reliance on the affidavit as grounds for issuing the draws. On the December 17, and December 28 draws, no affidavits were requested. No evidence was presented to show that the vice-president would have denied the December 7 draw had the true facts had been known. Since no evidence was presented

---

to establish the actual amount owing at the time of the first affidavit, it is impossible to determine whether or not there was even a significant difference. A review of the documents indicates that Davis listed a total of $7,000 due to a lumber supplier and a concrete vendor. Since the draw of $13,100 should have covered all of Davis' expenses up to that point (since he had not previously received any money on the project), it is unlikely that there could have been much more in unpaid bills. Furthermore, the bank has admitted some liability for its disregard of the affidavits by compensating the Rishells for half of their loss sustained in cost overruns. The plaintiffs have failed to prove that Davis' false statements bore any weight in the banks decision to transfer draws to Davis' account, and have therefore failed to prove reliance.

Plaintiffs have also failed to show direct damage resulting from Davis' false statements. No proof of a causal connection between Davis' failure to apply loan funds solely to the Rishells' project, and alleged damages incurred was shown. There was no credible evidence to show that expenditures would not have been in the same amounts if Davis had applied all of the loan funds to pay suppliers and subcontractors for the Rishells' residence. In addition, Davis replaced equivalent value for the funds he drew from the Rishells' account. What damages the plaintiffs incurred appear to have resulted from cost overruns on the project. No evidence was given to show that these overruns were the result of Davis' false statements rather than an underestimated cost to complete the project.

Having failed to prove intent, reliance, or resulting damages, we deny plaintiffs recovery for fraud, and deny plaintiffs claim of non-dischargeability pursuant to § 523(a)(2)(A) of the Bankruptcy Code.

## II. Defalcation by a Fiduciary

Plaintiffs also seek an exception to discharge for defalcation of funds while acting in the capacity of a fiduciary pursuant to § 523(a)(4) of the Bankruptcy Code. We must first determine whether Davis was acting as a fiduciary to the Rishells. For § 523(a)(4) purposes, a fiduciary relationship only exists in the face of an express or technical trust. *In re Kelley*, 84 B.R. 225, 229 (Bkrtcy.M.D.Fla.1988). To create an express or technical trust, there must be sufficient words to create a trust, a clearly defined trust res, and an intent to form a trust. *Id.* The trust relationship must exist before the violation of the trust, and cannot arise out of that violation. *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333, 55 S.Ct. 151, 153, 79 L.Ed. 393 (1934).

The bankruptcy definition of trust excludes constructive, or implied trusts, but may include statutory trusts if they meet the other requirements for an express or technical trust. *Kelley*, 84 B.R. at 229. No trust was created by the contractual relationship between Davis and the plaintiffs. The plaintiffs argue that a trust relationship was created pursuant to Florida Statute § 713.34 which makes the misappropriation of funds designated for a specific construction project a crime. This argument has been addressed fully by a Florida bankruptcy court. See *In re Kelley*, 84 B.R. 225. As stated therein, the Florida materialmen's lien law does not require the segregation of funds, and is therefore insufficient to create a trust. *Id.*, at 230. The court in *Kelley* points out that even if Fla.Stat. § 713.34 does create a trust, it is one which arises out of the wrongful act itself, and thereby inapplicable for non-dischargeability. *Id.* We find the reasoning of *Kelley* persuasive, and find that Fla.Stat. § 713.34 does not create a fiduciary relationship under the Bankruptcy Code. Plaintiffs have failed to show a fiduciary relationship between themselves and Davis, and no exception to discharge is warranted.

Bankruptcy Code § 523(a)(4) also provides an exception to discharge for embezzlement, which is defined as the fraudulent appropriation of money or property by a person to whom such property has been entrusted, or into whose hands it has lawfully come. *Savonarola v. Beran*, 79 B.R. 493, 496 (Bkrtcy.N.D.Fla.1987). To prove

embezzlement, the plaintiffs must show that Davis appropriated the funds for his own benefit, and that he did so with fraudulent intent or deceit. *Id.* The same reasoning regarding fraudulent intent discussed above is equally applicable to the requisite intent for embezzlement. We must also consider Davis' use of the funds once received.

The evidence presented at trial fails to show that Davis appropriated plaintiffs' funds with intent to use those for his own interests. It is undisputed that on December 7, 1984, $13,100 was transferred by INB from the plaintiffs' account to Davis' general business account, and that the plaintiffs' funds were co-mingled with other funds in Davis' account. It is also undisputed that Davis made expenditures from this account on other projects. However, testimony at trial revealed that Davis as a matter of course co-mingled funds from different projects, and paid bills from his general account according to which bills were most pressing. Testimony also revealed that several of Davis' materialmen billed him according to total outstanding debt rather than by individual projects. Further testimony was given that Davis did not keep separate records as to which expenditures were made for which projects. No document or other evidence was offered to establish any special requirement on the part of Davis to either keep separate accounts, or to use the funds received only for the plaintiffs' project.

The plaintiffs must bear some of the responsibility for Davis' failure to use prudent administrative procedures since Davis is not, nor did he ever represent himself to be a licensed contractor. When the plaintiffs chose to deal with an unlicensed builder, they assumed some risk that he would not be familiar with and follow those administrative procedures that a licensed contractor would be required to learn in order to obtain a license. The evidence does show that Davis mismanaged his business affairs, however, this is not equivalent to wrongful intent, and no grounds for an exception to discharge are present.

The plaintiffs have an additional claim for civil theft citing Florida Statute § 812.024, and are seeking treble damages pursuant to Fla.Stat. § 812.035(7). The court has been unable to locate Fla.Stat. § 812.024, and assumes plaintiffs intended a claim based on § 812.014. To be guilty of theft under Fla.Stat. § 812.014, the plaintiffs must prove that the accused "knowingly obtains or uses ... the property of another *with intent* to ... deprive the other person of a right to the property or a benefit thereto." Fla.Stat.Ann. § 812.014(1) (emphasis added). The intent required must be criminal intent to do a wrongful act, and not mere negligence or recklessness. *In re Latch*, 820 F.2d 1163 (11th Cir.1987). We have already found that Davis' conduct does not meet the required level of intent for fraud or embezzlement, likewise, we do not find the requisite intent for civil theft.

The plaintiffs have not carried the burden of proof necessary to sustain an exception to discharge and accordingly, their claim shall be subject to the previously entered discharge.

A separate final judgment will in accordance herewith be entered.

DONE AND ORDERED.