**In re Kimberly M. FUTCH, Debtor.**

**H. Reid Sides, Jr., Plaintiff,**

**v.**

**Kimberly M. Futch, Defendant.**

**Bankruptcy No. 99–9527–3P7.**
**Adversary No. 00–89.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

March 27, 2001.

---

Stephanie D. Staples, Ocala, FL, for plaintiff.

J. Herbert Williams, Ocala, FL, for defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This proceeding came before the Court upon complaint filed by H. Reid Sides, Jr. ("Plaintiff") to determine the dischargeability of a debt pursuant to 11 U.S.C. §§ 523(a)(4) and 523(a)(6). The Court held a trial on September 26, 2000 and November 22, 2000. In lieu of oral argument, the Court instructed the parties to submit briefs. Upon the evidence and the submissions of the parties, the Court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACTS

1. In August 1996, Plaintiff and Kimberly Futch ("Defendant") formed a partnership, Ocala Discount Auto Wholesale ("ODAW"), for the purpose of purchasing and reselling motor vehicles at wholesale.

2. On August 5, 1996, ODAW obtained a $200,000.00 line of credit.

3. ODAW was to operate as follows: a wholesale agent who represented the partnership would purchase vehicles from dealers, auctions, and other wholesalers. Defendant would then write a check from the line of credit to acquire the vehicle. The vehicle would be resold at a price sufficient to pay the wholesale agent's commission, to repay the line of credit, and to generate a profit for the partnership.

4. Neither Plaintiff nor Defendant had prior experience in the retail or wholesale automobile industry. Defendant, however, was the president of a retail automobile business, MK Investments, Inc., which conducted business as Ocala Discount Auto Sales ("ODAS"). Defendant testified that she did not participate in ODAS's daily operations or management, or receive a salary. Defendant rarely wrote checks on ODAS's account. Additionally, Defendant testified that a bookkeeper maintained and balanced ODAS's checking account. Defendant testified she became involved with ODAS because her estranged husband, Mike Lehman ("Lehman"), wanted to become involved in retail automobile sales but lacked the necessary credit to do so. Defendant therefore obtained the credit to fund ODAS's startup.

5. Plaintiff testified that he was apprehensive about Lehman's trustworthiness and "wanted to keep the car dealer away from the money." Consequently, Lehman did not have the authority to sign checks on ODAW's account. Nonetheless, Lehman signed a number of checks on ODAW's account, forging Defendant's signature.

6. It was anticipated that ODAW would use ODAS's dealership license to purchase vehicles. Additionally, ODAW was operated on the site of ODAS.

7. Because both Plaintiff and Defendant were otherwise employed, he as a consultant to a medical business, and she as a regional sales manager for a gas company, neither spent much time at the business.

8. Defendant was responsible for maintaining ODAW's checkbook as well as a written inventory. Defendant testified that when Plaintiff asked her about specific vehicles on the inventory list, she referred him to Lehman. Neither party conducted actual physical inventory checks.

9. Plaintiff testified that he expected Defendant to hold the vehicle titles and to release them only after ODAW received payment. Defendant testified, however, that most vehicles were bought and resold by ODAW while the title remained in the possession of the previous lien holder. Consequently, Defendant's maintenance of the titles until receipt of payment by ODAW was impossible. Additionally, Defendant testified that she repeatedly advised Plaintiff that the transactions were normally closed without Defendant ever having received the titles.

10. In December 1996, ODAW's wholesale agent was terminated. Thereafter, Lehman assumed the responsibility of purchasing vehicles for ODAW.

11. In September 1997, Plaintiff purchased half of the shares of MK Investments, Inc.

12. In October 1997, Plaintiff began inquiring into the status of ODAW's inventory. Plaintiff testified that his search for ODAW's inventory led to the discovery of only 3 or 4 vehicles. Plaintiff testified that

in response to his request to Lehman to perform an inventory check, Lehman became physically confrontational.

13. Defendant testified that she subsequently learned Lehman had resold vehicles purchased by ODAW, but had deposited the money into ODAS's account instead of repaying ODAW's line of credit. The result was a $200,477.00 outstanding balance on ODAW's line of credit with no corresponding inventory.

14. Defendant also testified that neither party was delegated or assumed the responsibility for matching the list of vehicles maintained by Defendant to actual vehicles until after the vehicles were discovered missing.

15. On February 22, 1999, Friendship Community Bank, holder of the promissory note executed by ODAW, assigned its interest to Daniel Hicks.

16. On February 25, 2000, Daniel Hicks assigned his interest to Plaintiff.

17. Plaintiff contends that the debt due to him by Defendant him as a result of the assignment of the promissory note is non-dischargeable pursuant to §§ 523(a)(4) and 523(a)(6).

### CONCLUSIONS OF LAW

**A. 11 U.S.C. § 523(a)(4)**

Count I of the complaint seeks an exception to Defendant's discharge pursuant to 11 U.S.C. § 523(a)(4). In order to except a debt from discharge pursuant to § 523(a)(4), Plaintiff must establish that Defendant committed: 1) fraud or defalcation while acting as a fiduciary, 2) embezzlement, or 3) larceny. The complaint does not allege that Defendant committed larceny. Accordingly, the Court will only address fraud or defalcation while acting in a fiduciary capacity and embezzlement.

### 1. Fraud or Defalcation While Acting in a Fiduciary Capacity

The existence of a fiduciary relationship is determined by federal bankruptcy law rather than state law. *Cladakis v. Triggiano (In re Triggiano)*, 132 B.R. 486, 490 (Bankr.M.D.Fla.1991). Fiduciary capacity should be narrowly defined. *Quaif v. Johnson (In re Quaif)*, 4 F.3d 950, 952 (11th Cir.1993). "[T]he traditional meaning of the term 'fiduciary'—a relationship involving confidence, trust and good faith—[is] far too broad for bankruptcy purposes." *Clark v. Allen (In re Allen)*, 206 B.R. 602, 606 (Bankr.M.D.Fla. 1997) (quoting *Liberty Nat'l Bank v. Wing (In re Wing)*, 96 B.R. 369, 374 (Bankr. M.D.Fla.1989)). The fiduciary relationship necessary for an exception to discharge requires the existence of an express or technical trust. *Am. Sur. & Cas. Co. v. Hutchinson (In re Hutchinson)*, 193 B.R. 61, 65 (Bankr.M.D.Fla.1996). An express or technical trust exists when there is a segregated trust res, an identifiable beneficiary, and trust duties established by contract or statute. *Id.* However, this Court has previously held that the partnership relationship is insufficient to create the fiduciary relationship required by § 523(a)(4). *J.C. Faw v. Wiles (In re Wiles)*, 166 B.R. 975, 980 (Bankr.M.D.Fla. 1994). Accordingly, Defendant was not acting in a fiduciary capacity. Having so determined, the Court need not address fraud or defalcation. Accordingly, Defendant's debt to Plaintiff is not excepted from Defendant's discharge for fraud or defalcation while acting in a fiduciary capacity.

### 2. Embezzlement[1]

Embezzlement is the "fraudulent appropriation of property by a person to

---

1. In Count I of the complaint Plaintiff alleges that Defendant committed embezzlement.

whom such property has been entrusted, or into whose hands it has lawfully come." *NesSmith Elec. Co. v. Kelley (In re Kelley)*, 84 B.R. 225, 231 (Bankr.M.D.Fla. 1988) (quoting *Moore v. United States*, 160 U.S. 268, 269, 16 S.Ct. 294, 40 L.Ed. 422 (1895)). To prevail on an embezzlement claim, Plaintiff must show that Defendant appropriated funds for her own benefit and with fraudulent intent or deceit. *Carlson v. Rigsby (In re Rigsby)*, 152 B.R. 776, 778 (Bankr.M.D.Fla.1993). One cannot embezzle one's own property. *Id.* Additionally, a partner cannot embezzle partnership property. *Id.* Because Defendant was a partner in ODAW and a cosigner on the account, she was a co-owner of the funds. Defendant cannot be held to have embezzled her own property. Accordingly, Defendant's conduct does not constitute embezzlement and is therefore not excepted from discharge on that basis.

**B. 11 U.S.C. § 523(a)(6)**

 Finally, Plaintiff argues that the debt he must repay as a guarantor on the note is excepted from Defendant's discharge pursuant to 11 U.S.C. § 523(a)(6). Section 523(a)(6) provides, in relevant part, that a discharge under § 727 will not discharge an individual from any debt caused by "[t]he willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). To be successful under this subsection, a plaintiff must show: 1) an intentional action by the defendant, 2)

done with intent to harm, 3) which causes damage (economic or physical) to the plaintiff, and 4) the injury is the approximate result of the action by the defendant. *Citizens First Nat'l Bank v. Hunter (In re Hunter)*, 229 B.R. 851, 860 (Bankr. M.D.Fla.1999).

Plaintiff asserts that the following conduct resulted in willful and malicious injury to his property and is therefore non-dischargeable pursuant to § 523(a)(6). Plaintiff points out that Defendant allowed Lehman to sign checks for ODAW even though he was not an authorized signatory on the account and was expressly forbidden from signing checks on behalf of ODAW. Plaintiff further contends that Defendant converted funds to ODAS for the purchase of vehicles without ensuring that they were actually placed in ODAW's physical inventory and without ensuring that ODAS repaid ODAW once the vehicles were sold. Plaintiff contends that Defendant's approval of such disbursements, coupled with her access to the checkbooks of ODAW and ODAS, indicates that she was aware that funds were being misappropriated from ODAW to ODAS.

The Court finds that Defendant's acquiescence in allowing Lehman to sign checks for ODAW does not constitute an intentional act done with intent to harm. In any event, none of the alleged damages in this proceeding are attributable to Lehman's signing of ODAW checks.[2] Accord-

---

Neither Plaintiff's Closing Argument/Memorandum of Law nor his proposed Findings of Fact or Conclusions of Law refer to embezzlement. Nonetheless, the Court will address embezzlement since it was alleged in the complaint.

**2.** Lehman signed the following ODAW checks:
# 2027 October 1996: $500.00 to Mark Heller, the wholesale agent

# 2074 December 20, 1996: $50.00 to Neal Vandygiff
# 2075 December 21, 1996: $4,536.00 to Florida Auto Auction
# 2076 December 27, 1996: $720.00 to B.M.A.K.
# 2077 December 27, 1996: $8,588.00 to Citizens National Bank
# 2078 December 27, 1996: $10,708.00 to Citizens National Bank

ingly, Plaintiff's assertion that Defendant's knowledge that Lehman was signing ODAW checks constitutes willful and malicious conduct pursuant to § 523(a)(6) must fail.

Additionally, Defendant's failure to insure that the vehicles for which she disbursed funds were placed in ODAW's inventory or that ODAW was repaid when ODAS sold the vehicles, is not willful and malicious conduct. Presumably, Plaintiff is referring to Defendant's failure to insure that ODAW was repaid prior to the release of a vehicle's title. However, as Defendant testified, the pace at which vehicles were bought and resold precluded such a procedural safeguard. Additionally, Plaintiff was aware of the procedure.

Lehman's misappropriation of funds went undetected because a physical inventory check was not performed. Defendant testified that a discussion of which party was responsible for keeping track of the inventory occurred at the end of 1997 rather than at ODAW's inception. Defendant acknowledged that she maintained an inventory, although only on paper. In the absence of an agreement as to who was responsible for performing a physical inventory check, Defendant's failure to do so, while irresponsible and careless, does not rise to the level of conduct contemplated by § 523(a)(6).

Furthermore, Defendant's access to the checkbooks of ODAW and ODAS does not impute to her the knowledge that ODAS was selling vehicles which had been purchased by ODAW and retaining the proceeds.[3] Defendant testified that she had no involvement with ODAS's daily operations and that a bookkeeper balanced the checking account. A review of ODAS's bank statements reveals that Defendant rarely wrote checks on ODAS's account. The Court finds credible Defendant's testimony that she was not aware that funds were being misappropriated. Because Defendant was not aware of what was occurring, she could not have intended to injure Plaintiff. Accordingly, Defendant's debt to Plaintiff is not excepted from Defendant's discharge pursuant to § 523(a)(6).

## CONCLUSION

The partnership relationship is insufficient to establish the fiduciary capacity required by § 523(a)(4). Furthermore, a partner cannot embezzle partnership property. Accordingly, the debt Defendant owes to Plaintiff is not excepted from Defendant's discharge for fraud or defalcation while acting in a fiduciary capacity or embezzlement pursuant to § 523(a)(4). Additionally, because Defendant was not aware that funds were misappropriated from ODAW to ODAS until after the fact, Defendant did not possess the intent required

---

# 2079 January 2, 1997: $21,500.00 to ODAS
# 2080 January 2, 1997: $6,795.00 to Citizens National Bank
# 2081 January 2, 1997: $7,300.00 Crystal Chevrolet
With the exception of checks # 2074 and # 2076, all of the checks signed by Lehman were used to pay the commission of the wholesale agent or to buy vehicles that were subsequently sold. ODAW was reimbursed for all of the vehicles purchased with checks signed by Lehman.

3. Also, ODAS's retention of the proceeds, without more, does not render Defendant liable. "Generally, directors, officers and stockholders are not liable for corporate acts simply by reason of their official relationship to the corporation. Actual wrongdoing in the form of fraud, self-dealing or unjust enrichment would have to be established in order to trigger individual liability." *Taylor v. Wellington Condo. Ass'n,* 633 So.2d 43, 44 (Fla. 5th Dist.Ct.App.1994). Plaintiff failed to prove that Defendant engaged in actual wrongdoing.

for willful and malicious injury. Accordingly, Defendant's debt to Plaintiff is not excepted from discharge pursuant to § 523(a)(6).