In re Todd Neil WOODS, fka Todd Neil Hull, Debtor.

EMERALD EMPIRE BANKING COMPANY, Plaintiff,

v.

Todd Neil WOODS, Defendant.

Bankruptcy No. 681–05442.
Adv. No. 681–6211.

United States Bankruptcy Court, D. Oregon.

March 30, 1982.

John Franklin, Eugene, Or., for plaintiff.

Todd Neil Woods, pro se.

## MEMORANDUM OPINION

C.E. LUCKEY, Bankruptcy Judge.

Plaintiff filed its complaint seeking judgment for $1,593.37, plus interest at 15% from October 17, 1980 until paid, and for determination that the obligation is a non-dischargeable debt under the provisions of § 523(a)(2)(A) and § 523(a)(2)(B) of the Bankruptcy Code.

The complaint acknowledges that the obligation was based upon the debtor-defendant's Consumer Credit Application.

The debtor filed no appearance in response to the complaint and because of the allegation of fraud, the plaintiff was required to present a prima facie case. In presenting its prima facie case, plaintiff called the defendant as a witness and he acknowledged that the debts listed on his bankruptcy petition were his obligations as listed. Numerous of such debts were omitted from the defendant-debtor's Consumer Credit Application, upon which the officer of the plaintiff, Jerry Burke, testified he relied in making the loan to the defendant. Other evidence of wilful misrepresentation was offered and established a prima facie case for determination that the obligation due the plaintiff was nondischargeable as alleged.

The plaintiff seeks judgment for its attorney fees in the proceedings. In a like proceeding, *The Diner's Club International v. Merrick*, Docket Number 680–6268, District of Oregon, 1981, this Court ruled that because of the unevenhanded provisions of § 523(d) of the Bankruptcy Code, which provides:

"(d) If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment against such creditor and in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding to determine dischargeability, unless such granting of judgment would be clearly inequitable.",

that Congress had provided no basis for the attorney fee award. Counsel seeks further consideration of the Court's position as it may apply to this proceeding because of the Tennessee case of *In re Crosslin*, 14 B.R. 656 (Bkrtcy.M.D.Tenn.1981) and suggests undue reliance by the Court on *In re Fulwiler*, 624 F.2d 908 (9th Cir.1980). *Fulwiler's* facts are somewhat different from those before the Court herein, but the Ninth Circuit has clearly stated its position therein that in bankruptcy proceedings dischargeability is a purely federal cause of action, and that: "In any event, the award of attorney's fees

in a bankruptcy proceeding should rest upon a firmer foundation that the semantical characterization of a particular proceeding." Counsel argues that the facts of this case provide the "firmer foundation" required.

The federal courts in awarding attorneys fees have generally applied what has been referred to as the "American Rule". Under the American Rule in cases involving federal law, attorneys fees are not allowable absent a statutory basis, a basis created by instrument which is the basis for relief in the case, or certain aggravated conduct situations justifying their imposition as an equitable requirement. The argument that the American Rule would justify the award in this proceeding, and in this Court's opinion, the Tennessee rulings, *In re Crosslin,* supra, and other Tennessee cases which follow it, ignore the legislative history of § 523(d). House Report No. 95–595, 95th Cong., 1st Sess., at pages 131 and 132 (1978), U.S.Code Cong. & Admin.News, pp. 5787, 6092, states:

"Creditor practices in this area have been so strong that the Bankruptcy Commission recommended that the false financial statement exception to discharge be eliminated for consumer debts. This bill recognizes, however, that there are actual instances of consumer fraud, and that creditors should be protected from fraudulent debtors. It retains the exception, with small modifications. But it also recognizes that the leverage creditors have over their debtors comes not so much at the stage when the loan application is made, but rather when bankruptcy ensues.

"The threat of litigation over this exception to discharge and its attendant costs are often enough to induce the debtor to settle for a reduced sum, in order to avoid the costs of litigation. Thus, creditors with marginal cases are usually able to have at least part of their claim excepted from discharge (or reaffirmed), even though the merits of the case are weak. Statistics from a recent year, for example, show that approximately 8,000 cases were filed under this exception to discharge. Of those, over 5,000 were settled without trial. Of the remaining 3,000, creditors won just half. If those 3,000 are representative, then it is likely that in 2,500 cases, debtors settled by agreeing to repay part of the debt, even though they would have won the case had it gone to trial.

"In order to balance the scales more fairly in this area, H.R. 8200 adopts a compromise. The false financial statement exception is retained, and the creditor, as under current law, is required to initiate the proceedings to determine if the debt is nondischargeable. If the debtor prevails, however, the creditor is taxed costs and attorney's fees, and may be taxed any actual pecuniary damages, such as loss of a day's work, that the debtor might have suffered as a result of the litigation. The present pressure on the honest debtor to settle in order to avoid attorney's fees in litigation over a creditor—induced false statement is eliminated. The creditor is protected from dishonest debtors by the continuance of the exception to discharge.

"The bill does not award the creditor attorney's fees if the creditor prevails. Though such a balance might seem fair at first blush, such a provision would restore the balance back in favor of the creditor by inducing debtors to settle no matter what the merits of their cases. In addition, the creditor is generally better able to bear the costs of the litigation than a bankrupt debtor, and it is likely that a creditor's attorneys fees would be substantially higher than a debtor's, putting an additional disincentive on the debtor to litigate.

"The costs-attorney's fees provision is mandatory. If the provision were made permissive instead of mandatory, with discretion in the court to award such amounts as were proper in each particular case, the debtor would once again be subject to the risk of paying attorney's fees and losing a day's work without pay. The balance would again shift back toward the creditor, and would put pressure

on the debtor to settle. Making the provision discretionary would seriously weaken the protection it provides."

Thus, the motivation of the Congress in the uneven-handed statutory scheme, which in *Merrick,* supra, the Court referred to as obscure has in fact been documented, and it is not the function of the court to legislate. There has been raised no constitutional question that such legislation may transgress the requirements of equal protection of the laws, and this Court does not reach such issue or non-issue in these proceedings. The *Crosslin* case, supra, represents the minority view.

A recent case, *Matter of Benedict,* 15 B.R. 675, (Bkrtcy.W.D.Mo.1981) has applied some equitable even-handedness, but requires more than proof of the elements required for a determination of nondischargeability for the additional remedy of award of attorney fees, consistent with *Fulwiler,* supra. No such aggravation appears in these proceedings. In *Benedict,* supra, at page 678, the court opines:

"Rather, the American Rule, it appears, can be applied in favor of a plaintiff in a nondischargeability case under § 523(a)(2) of the Code only with respect to such fraud as required him to prosecute an action of greater dimension than he could otherwise have expected to prosecute to obtain a decree of nondischargeability under § 523(a)(2). In the action at bar, therefore, the fraud which is alleged in the plaintiff's complaint cannot and should not constitute any basis for an award of attorney's fees. If it were, the bankruptcy courts could be required to award attorney's fees in each and every action under § 523(a)(2) in which they were successful in obtaining the decree of nondischargeability. And, as concluded above, that cannot be the intent of Congress."

Plaintiff may present an appropriate form of Judgment against the defendant for $1,593.37 plus 15% interest until the date of the debtor's bankruptcy, April 20, 1981, together with interest at the legal rate thereafter until paid and that such obligation is determined to be nondischargeable.

This Opinion contains the Court's Findings of Fact and Conclusions of Law and pursuant to Bankruptcy Rule 752 they will not be separately stated.