CLARK, Circuit Judge,
dissenting:
Resolution of appellant’s claim in the posture presented violates the Article III case or controversy requirement. Further, the majority’s resolution of the substantive issue disregards the policy animating section 523(d)’s provision for attorney’s fees. The debtors in this action never filed a responsive brief in the district court. On *1510 appeal, the debtors, again, did not contest the issue of attorney’s fees. Indeed, appellant Transouth, in its brief, correctly anticipated that “this appeal will likely not be contested.” Thus, by manipulating the terms of its settlement with the debtor, Transouth has ensured that it would be profitable (and expedient) for the debtor not to contest the issue of attorney’s fees.
Through section 523(d)’s attorney’s fee provision, Congress intended to protect debtors from the “leverage creditors have over their debtors ... when bankruptcy ensues.” [1] It is, therefore, ironic that the majority permits this creditor’s claims to go forward solely on representations made by the creditor, Transouth. Contrary to bankruptcy policy and congressional intent, the court today allows the creditor to use that leverage to accomplish its desired result. For the reasons stated below, I dissent.
I. JUSTICIABILITY AS JURISDICTIONAL REQUIREMENT
My concern with the “ease or controversy” issue is animated by three related principles of justiciability. First, when both parties affirmatively desire the same result, no justiciable case is presented.[2] Second, and related, is the concept that “parties seeking access to a judicial decision by an Article III court may not so plan their conduct as to eliminate all conflict except a disagreement over a general principle.”[3] Third, and perhaps most important, “[t]he court must dismiss a ease where the cooperation of the plaintiff and the defendant might adversely affect the rights of outsiders if the question of law is decided in the manner that both parties desire.”[4]
The behavior of the “adversaries” in this action, during settlement and throughout the course of proceedings from the bankruptcy court to our court, is particularly pertinent to the issue of justiciability. Appellant Transouth, in March of 1987, filed an action pursuant to 11 U.S.C. § 523(a)(2) to request a determination of dischargeability of debt owed by the Johnsons on a defaulted note. As alleged in the complaint, the “amount due under the note as of the date of the petition” was $2,660.31. Under the terms of the note, and upon default, Transouth could accelerate the debt to require the debtor to pay the unpaid balance and accrued interest. The note also provided that, if Transouth had to hire a lawyer to collect the account, the debtor would be liable for “our reasonable lawyer’s fees of 15% of the unpaid balance or $150.00 whichever is greater.”
In February 1988, Transouth entered into a “Stipulation of Settlement” with the Johnsons, pursuant to which the Johnsons consented to the entry of judgment on the note in favor of Transouth “in the principal amount of $2,000.00 plus costs of $150.25, interest at the judgment rate, and reasonable attorney’s fees as provided in the note.” Significantly for the debtor, the settlement, including attorney’s fees, reduced the total amount owed on the note ($2600.31 to $2300.00). In effect, then, in exchange for an agreement by the debtor not to dispute payment of attorney’s fees, Transouth agreed to reduce the amount of the debt. And, as appellant’s counsel made clear at oral argument, see below, were the amount of attorney’s fees the issue, denial of the $300.00 fee would not be worth pursuing. The quality of the judgment (i.e., attorney’s fees rather than principal debt), not its amount, was the motive behind the lawsuit.
The bankruptcy court granted judgment on the issue of dischargeability in favor of Transouth pursuant to section 523(a)(2), but denied the parties’ stipulation to award attorney’s fees to Transouth. The bank *1511 ruptcy court determined that it had no authority under section 523(d) to award attorney’s fees to a prevailing creditor. The court awarded Transouth the principal amount of $2000.00, with costs ($150.25) and interest (12% per annum). The district court affirmed.
Under the arrangement agreed to by the parties in their stipulation of settlement, the debtor has absolutely no incentive to contest the award of reasonable attorney’s fees, capped at $300.00, because under the attorney’s fee arrangement in the settlement, his indebtedness is reduced. And, in fact, despite the clear basis recognized by the courts for arguing that creditors are not entitled to attorney’s fees under section 523(d), the debtor permitted this action to go forward in the bankruptcy court, the district court, and this court entirely on the strength of Transouth’s briefs and oral argument.
At oral argument, counsel for appellant plainly conceded that no dispute ever existed between the parties on the attorney’s fee issue — that her client, in effect, sought an advisory opinion from this court. In her opening remarks, counsel stated:
I think that if ever there was a case that exemplifies the maxim, it’s not the money that’s the issue, it’s the principle of the thing, that’s this case.... [T]here is an attorney fee cap in this case that is so ridiculously low and insignificant — it barely would cover the cost of a plane trip between Tampa and Atlanta. However, the issue is very significant, and I think that is why y’all have granted oral argument in this case.
In response to the question why counsel for the bankrupt debtor had agreed to an assessment of attorney’s fees when ample authority rejected awards of attorney’s fees to creditors in non-dischargeability actions, counsel explained that the debtor had agreed to the award of attorney’s fees proposed by Transouth “because the settlement ended up reducing the debt down.” That is, Transouth stipulated it would accept $2000.00 as the amount of the debt, plus post-petition interest, and attorney fees capped at $300.00. The following exchange then occurred:
Judge Clark: The debt was $2,660.00. Appellant: That’s correct.
Judge Clark: That’s how much money was owed. Now you stipulated that you would accept $2,000.00.
Appellant: Plus the post-petition interest.
Judge Clark: Yes, right. Well, the interest would run on in any event. But your client agreed to take $2,000.00 and of course [the debtor’s attorney] knew that — I guess you talk about the cap. In other words, the $300.00. So he was getting some gravy for his client by stipulating as to the attorney fee. I am concerned about whether we really have a case in controversy here. It seems to me that your client wanted to get this issue before the court and you’ve got a stipulation which brings up an issue without an opponent.
Appellant: I know.
Judge Clark: ... [Y]ou seem to be agreeing with me.
Appellant: I do agree with you....
The posture of the parties throughout these proceedings suggests that appellant crafted the terms of the settlement solely for the purpose of getting the attorney’s fee issue before the court in a nonadver-sarial context.
It is well-established that no justiciable controversy is presented in the absence of a defendant having an interest adverse to that of the plaintiff.[5] Argument by adverse parties “ ‘sharpens the presentation of issues upon which the court so largely depends for illumination of difficult ... questions.’ ”[6] Here, we are faced with deciding this issue based on appellant’s brief and argument, urging a favorable conclusion as to the availability of attorney’s fees upon a finding of nondischarge- *1512 ability. In such a posture, this case does not present a question “in an adversary context,” as required by the Constitution.[7] When, as here, opposing litigants desire the same result, no case or controversy is presented.
The appropriate judicial response to collusive litigation — such as that presented by this case — by parties who, though formally independent, cooperate to achieve the same result, is illustrated by Lord v. Veazie,[8] In that case, ownership of the Bangor and Piscataquis Canal and Railroad Company was claimed alternatively by a bank and by Veazie and others who were stockholders prior to reorganization. Veazie sold stock in the company to Lord. Also in dispute was the right of the company to navigate upon the Penobscot River. An exclusive legislative grant of navigational rights on the river had been given to individuals not parties in the action. At issue in the case was a covenant entered into by Lord and Veazie, in which Veazie agreed that certain stock carried all the claimed rights of ownership. Lord sued Veazie on the covenant, with an agreed upon stipulation of facts, for the purpose of determining ownership and navigation rights. The Supreme Court dismissed the case, stating that
any attempt, by a mere colorable dispute, to obtain the opinion of the court upon a question of law which a party desires to know for his own interest or his own purposes, when there is no real and substantial controversy between those who appear as adverse parties to the suit, is an abuse which courts of justice have always reprehended, and treated as a punishable contempt of court....
The objection in the case before us is, not that the proceedings were amicable, but that there is no real conflict of interest between them; that the plaintiff and defendant have the same interest, and that interest adverse and in conflict with the interest of third persons, whose rights would be seriously affected if the question of law was decided in the manner that both of the parties to this suit desire it to be....[9]
A similar result was reached by the Supreme Court in United States v. Johnson,[10] in which a landlord sought to invalidate the rent controls in the Emergency Price Control Act of 1942. To obtain the desired result, the landlord requested that his tenant bring an action under the Act seeking treble damages for excessive rent. Notwithstanding the tenant’s presence as the nominal plaintiff, the landlord controlled the suit and paid his tenant’s attorney’s fees. Because of the lack of adverse parties and the collusive nature of the suit, the Supreme Court directed that the action be dismissed.
Similarly, here, Transouth argues the attorney’s fee issue in a nonadversarial action, and, by manipulating the terms of the settlement, has contrived a settlement to get the debtor to agree to pay the reduced debt plus attorney’s fees rather than contesting the fee award and paying the full amount of the debt. We should not accommodate appellant with an opinion which then becomes the law in this circuit. As in Johnson, we should order dismissal of the action for lack of essential “ ‘honest and actual antagonistic assertion of rights.’ ” [11]
In concluding that no case or controversy is presented by Transouth’s clever framing of the settlement stipulation, I recognize that courts have permitted litigation deliberately framed by the parties to go forward.[12] However, as one treatise writer explains, when a litigable issue results from “deliberate provocation,” an “actual *1513 adversary interest” must be present.[13] Thus, the Court in Evers, in finding that a controversy existed despite the deliberate framing of the issue, relied in part on the principle that “once a sufficient interest to support litigation is shown, it is immaterial that there may be other and dominating motives.” [14]
No such adversarial interest is presented in the case before us. Transouth should not be permitted, through the settlement agreement, to frame the amount due on the note as attorney’s fees in order to require this court unnecessarily to decide an issue not otherwise presented by the facts of the case.[15] Judicial concern should be particularly heightened here, as no one — in any proceeding — ever argued the interest of the debtor, and third-party rights are implicated, as discussed below.
This is not a case, such as that presented in Todman v. Todman,[16] in which failure to hear the appeal would risk substantial effect to the appellant. There, the court held that a real controversy existed on appeal despite failure of the appellee to file a responsive brief or to appear at oral argument. The court, in permitting the appeal to go forward, reasoned that given the risk of substantial effect on the appellant, lack of contest did not make the action any less a case or controversy.[17] Here, on the other hand, the only “risk” faced by the appellant results from its efforts to dictate the terms of the settlement stipulation to obtain a favorable ruling from this court in an uncontested, nonadversarial action. Pursuant to the bankruptcy and district court’s determinations, Transouth would be denied a portion of the amount due under the note only because it framed that amount as attorney’s fees rather than as debt. Thus, any hardship resulting to Transouth was self-created.
Finally, notwithstanding any exception to the adversity requirement carved out by the courts, it is hornbook law that the court must dismiss an action where, through cooperation between the plaintiff and defendant, judgment by the court might adversely affect the rights of outsiders if the question of law is decided favorably to both parties.[18]
Similarly, here, the interests of those not parties to this action are significantly affected and are not represented by the debt- or’s participation as a nominally adverse party. Because Mr. and Mrs. Johnson agreed that the amount owed on the note was nondischargeable, the effect of an award of attorney’s fees pursuant to 11 U.S.C. § 523(d) would be to increase the amount owed under the contract for which the debtor remains personally liable. Because the creditor with an interest in non-discharged debt participates on a pro rata basis in the bankruptcy proceeding, the proceeds available to creditors participating in distribution of the bankrupt estate are reduced. And, while in this case that reduction is almost de minimis — the pro rata share of the $300.00 fee — our decision also would apply to an action in which the amount could be substantially greater, sig *1514 nificantly affecting the interest of other creditors in bankruptcy distribution of assets.
Broader interests also are implicated by our decision in this action. In virtually any loan agreement or other arrangement between debtors and creditors, creditors, as a matter of course, provide in boilerplate language for attorney’s fees in the event of default. The effect of our decision today is to determine the meaning of attorney’s fee clauses in contracts between bankrupt debtors and creditors in dischargeability actions under section 528. Particularly given its significance, our determination of this issue should await an Article III case or controversy.[19]
Issues “hypothetically framed to elicit a ruling from this Court”[20] and presented in a non-adversarial context should not be the basis for a decision that concretely affects the interests of those not parties to this action. As Justice Frankfurter, writing for the Court, aptly warned: “Counsel are prone to shape litigation, so far as it is within their control, in order to secure comprehensive rulings.... Such desire on their part is not difficult to appreciate. But the court has its responsibility....”[21]
Under these circumstances, we need not and cannot decide the question urged upon us by Transouth.[22] For the reasons stated above, this appeal should be dismissed.
II. PREVAILING CREDITOR IS NOT ENTITLED TO SECTION 523(d) ATTORNEY’S FEES
Given the majority’s resolution of the substantive issue in this action, I am compelled to address the issue presented.
A. Congressional Intent.
Section 523(d), by its terms, provides for attorney’s fee awards only to prevailing debtors in dischargeability proceedings. The statute’s legislative history evidences congressional intent to disallow attorney’s fees as an element of creditor recovery in actions to determine nondischargeability:
Creditor practices in this area have been so strong that the Bankruptcy Commission recommended that the false financial statement exception to discharge be eliminated for consumer debts. This bill recognizes, however, that there are actual instances of consumer fraud, and that creditors should be protected from fraudulent debtors. It retains the exception, with small modifications. But it also recognizes that the leverage creditors have over their debtors comes not so much at the stage when the loan application is made, but rather when bankruptcy ensues.
The threat of litigation over this exception to discharge and its attendant costs are often enough to induce the debtor to settle for a reduced sum, in order to avoid the costs of litigation. Thus, creditors with marginal cases are usually able to have at least part of their claim excepted from discharge (or reaffirmed), even though the merits of the case are weak. Statistics from a recent year, for example, show that approximately 8,000 cases were filed under this exception to discharge. Of those, over 5,000 were settled without trial. Of the remaining 3,000, creditors won just half. If those 3,000 are representative, then it is likely that in 2,500 cases, debtors settled by agreeing to repay part of the debt, even though they would have won the case had it gone to trial.[23]
While I do not express any opinion as to the competing merits of the claims of the *1515 debtors and creditor in this action, I note only that the Johnsons did, in fact, enter into a stipulation of settlement with Tran-south for a “reduced sum.” The legislative history continues:
In order to balance the scales more fairly in this area, H.R. 8200 adopts a compromise. The false financial statement exception is retained, and the creditor, as under current law, is required to initiate the proceedings to determine if the debt is nondischargeable. If the debtor prevails, however, the creditor is taxed costs and attorney’s fees, and may be taxed any actual pecuniary damages, such as loss of a day’s work, that the debtor might have suffered as a result of the litigation. The present pressure on the honest debtor to settle in order to avoid attorney’s fees in litigation over a creditor-induced false statement is eliminated. The creditor is protected from dishonest debtors by the continuance of the exception to discharge.
The bill does not award the creditor attorney’s fees if the creditor prevails. Though such a balance might seem unfair at first blush, such a provision would restore the balance back in favor of the creditor by inducing debtors to settle no matter what the merits of their cases. In addition, the creditor is generally better able to bear the costs of the litigation than a bankrupt debtor, and it is likely that a creditor’s attorney’s fees would be substantially higher than a debtor’s putting an additional disincentive on the debtor to litigate.[24]
As the legislative history indicates, Congress purposefully sought to prevent creditors from asserting undue leverage on debtors by threatening them with litigation costs and attorney’s fees if the debtor refused to reaffirm her debt.
B. Federal Bankruptcy Law as Controlling.
The majority attempts to avoid the result dictated by Congress and the terms of the statute by reasoning that if state law recognizes a contractual right to attorney’s fees as an element of the contractual “debt,” attorney’s fees are allowable as nondischarged debt in an action pursuant to section 523(d). This result ignores U.S. Const., Art. I, § 8 cl. 4, vesting authority in Congress to establish uniform bankruptcy law. Simply stated, “a state law that is contrary to federal bankruptcy law must yield.”[25]
The Supreme Court’s decision in Brown v. Felsen[26] confirms how strictly federal is the remedy provided by section 523’s non-dischargeability provision. In interpreting section 523’s predecessor section, section 17(a), the Court held that a prior state court judgment or creditor collection action was not res judicata as to a subsequent bankruptcy dischargeability action, in part because
[b]y the express terms of the Constitution, bankruptcy law is federal law, U.S. Const., Art. I, § 8, cl. 4, and the Senate Report accompanying the amendment described the bankruptcy court’s jurisdiction over these § 17 claims as “exclusive,” S.Rep.No. 91-1173, p. 2 (1970).... [I]t would be inconsistent with the philosophy of the 1970 amendments to adopt a policy of res judicata which takes these § 17 questions away from bankruptcy courts and forces them back into state courts.[27]
Relying on Brown v. Felsen, the Ninth Circuit, in In re Fulwiler,[28] refused to permit a debtor who had been successful in a dischargeability proceeding (again, under the predecessor to section 523) to recover attorney’s fees. The debtor had invoked a state provision validating reciprocal contractual attorney’s fees provisions. The *1516 court rejected the classification of dis-chargeability proceedings as state “tort” or “contract” actions and determined that bankruptcy policy controlled the fee award:
We conclude that Section 17(a)(2) created a purely federal cause of action designed to implement the policies of the former Bankruptcy Act. Though elements of proof associated with both tort and contract actions may have been present in many non-dischargeability proceedings, Section 17 fell into neither classification.... In any event, the award of attorney's fees in a bankruptcy proceeding should rest upon a firmer foundation than the semantical characterization of a particular proceeding.[29]
Similarly, as the bankruptcy court in In re Wilson recognized with respect to the federal exclusivity of the dischargeability cause of action, “[i]n its legislative history Congress expressly rejected the application of state law in determining such matters as what constitutes alimony or support for purposes of determining the dischargeability of these debts.”[30] Likewise, here, federal law and congressional intent conclusively confirm that attorney’s fees are not an element of debt awarded to the creditor.
C. Bankruptcy Limitation on Contractual Right to Attorney’s Fees.
The majority’s conclusion that state law should determine whether a contractual attorney’s fees is allowable also is inconsistent with the precept that nondischargeable debt under section 523(a)(2)(B)’s fraud exception is limited to funds actually obtained by the alleged fraudulent representation. As the court in In re Record Co., Inc. recognized, it is a “well-established principle of bankruptcy that damages granted on nondischargeability complaints for obtaining money by false pretenses are limited to funds actually obtained by the representation. Consequential damages are not included, nor are punitive damages.”[31] Attorney’s fees incurred by the creditor in challenging discharge of the note do not constitute funds actually obtained by fraudulent statements made by the debtor. Similarly, the court in In re Smith recognized that with respect to a contractual provision for attorney’s fees, “any obligation created by that note is a contractual obligation and is not a liability which flows from the tort of false pretenses, which is the basis of a § 523(a)(2) action.”[32]
Such a result is not inconsistent with the bankruptcy definition of “debt” as “liability on a claim.”[33] A “claim” includes a “right to payment, whether or not such right is reduced to judgment, liquidated, unliqui-dated, fixed, contingent, matured, unma-tured, disputed, undisputed, legal, equitable, secured or unsecured.”[34] The case law cited above merely recognizes that, as a gloss on the meaning of “debt,” Congress balanced competing interests under section 523(d) by disallowing attorney’s fees to prevailing creditors and by “continupng] the exception to discharge” for the amount of debt actually obtained by the alleged fraudulent statements.[35]
More importantly, even if attorney’s fees constitute “debt” under state law, Congress, through federal bankruptcy law, has evidenced an intent to disallow attorney’s fees as an element of debt owed to a prevailing creditor in a dischargeability proceeding. Thus, in In re Senty, the bankruptcy court reasoned that congressional unwillingness to award attorney’s fees gives “great hesitancy to interpreting a general agreement to pay attorney’s fees if the balance is referred for collection to include an agreement to pay fees upon a *1517 determination of nondischargeability. Indeed, they indicate that a specific agreement to pay such fees might be suspect....”[36] In Senty, the credit card agreements in question provided that the debtor would pay reasonable attorney’s fees incurred in collecting delinquent accounts. The agreements did not “specifically contemplate that a cardholder must reimburse the creditor for attorney fees incurred in seeking a determination of non-dischargeability in bankruptcy.”[37] Relying on the legislative history, the court rejected the creditor’s request for attorney’s fees.
• As support for their holding, the majority reasons that “[o]ur reading of the Bankruptcy Code's plain language is reinforced by the fact that attorney’s fees are properly awarded to a creditor prevailing in a bankruptcy claim if there exists a statute or valid contract providing therefor.”[38] In support of this contention, the court makes reference to three cases,[39] only one of which, In re Martin, involved section 523; Fleischmann Distilling Corp. v. Maier Brewing Co. and Nat Harrison Assoc., Inc. v. Gulf States Utilities Co. do not involve bankruptcy at all. More specifically, the reasoning in these cases derives from the American Rule, which provides that in cases involving federal law, attorney’s fees are not allowable absent statutory provision, provision in the instrument that is the basis for relief, or certain aggravating conduct justifying equitable relief. Thus, for example, the court in In re Martin, addressing the same issue as that presented here,[40] relied on the Supreme Court’s decision in Security Mortgage Co. v. Powers[41] to hold that “creditors are entitled to recover attorney’s fees in bankruptcy claims if they have a contractual right to them valid under state law....”[42] In Security Mortgage, the Court held that the validity of a lien claimed by the mortgage company for attorney's fees must be determined by the law of the state in which the contract was entered into or in which the collateral was located.[43] There, a state court judgment against the debtor had created a special lien against the property in question for principal, interest, and attorney’s fees. Then-section 107 of the bankruptcy code provided that the trustee in bankruptcy takes property subject to valid liens existing at the time of the institution of the bankruptcy proceedings. The Court concluded that the validity of the attorney’s fee lien and construction of the contract for attorney’s fees presented a question of local law.[44]
However, the issue in Security Mortgage, and in the other cases cited by the majority in support of this proposition, is distinguishable. Section 523 was not involved in these cases. In Security Mortgage the attorney’s fees awarded to the creditor in bankruptcy were the subject of a liquidated judgment, creating a special lien upon the property. Under the bankruptcy code, the trustee in bankruptcy “takes property subject to valid liens existing at the time of the institution of the bankruptcy proceedings.”[45] The lien, in that case, was established by Georgia law and secured by property there. Because the bankruptcy code provision in Security Mortgage did not reflect congressional intent to disallow attorney’s fees liens against property, the case does not respond to the question whether the validity under *1518 state law of a contractual provision for attorney’s fees controls when Congress expressly evidences an intent to disallow such fees. Similarly, in Fleischmann, the Court reasoned only that “attorney’s fees are not ordinarily recoverable in the absence of a statute or enforceable contract providing therefor.”[46]
Congress, through section 523(d), has expressed an intent, as reflected in the legislative history, to disallow attorney’s fees to creditors in non-discharbability proceedings.[47] Application of the American Rule to award attorney’s fees provided by contract would ignore the expressed intent of Congress to the contrary.[48] This court’s reliance on the reasoning of Security Mortgage and Fleischmann Distilling to recognize a contractual right to fees under section 523, therefore, is misplaced.
D. Policy Animating Congressional Concern Supports Denial of Attorney’s Fees to Creditor.
Finally, Congress, in section 523, was concerned that creditors, by threatening litigation costs and attorney’s fees, could unfairly pressure debtors to reaffirm their debt, no matter what the merits of their case. If parties were permitted to preempt the effect of section 523’s disallowance of attorney’s fees to prevailing creditors simply by providing for attorney’s fees in their contracts, the balance struck by the Bankruptcy Code, as reflected in the legislative history, would be completely eliminated.
This is particularly true given the nature of section 523(a)(2)(B) discharge. The “fraud” exception to discharge applies only if the debtor’s fraudulent statement is in writing. Thus, the debt likely would be evidenced by a written agreement or contract, which almost invariably would contain an attorney’s fee provision. Permitting creditors to obtain attorney’s fees by means of contract in a dischargeability action would significantly undermine the protection provided by bankruptcy policy.
Congressional intent could not be clearer. Attorney’s fees are specifically allowed to debtors when the creditor’s suit is unsuccessful. As the text accompanying n. 23 supra plainly shows, Congress considered attorney’s fees for creditors and negated them.
III. CONCLUSION
Allowance of contractual attorney’s fees to prevailing creditors in dischargeability proceedings is inconsistent with congressional intent. As the legislative history explicitly states, Congress intended to protect creditors from dishonest debtors not by awarding creditors attorney’s fees but by denying debtors discharge from debt.[49] “[T]he motivation of Congress in the uneven-handed statutory scheme ... has in fact been documented, and it is not the function of the court to legislate.”[50] Moreover, contrary to the majority’s suggestion,[51] the intent of the statute is not to rely solely on “court-monitored procedure” to determine which settlements should be judicially sanctioned and which should not. In addition to the procedure set forth in section 524(c)-(d), which the majority cites, Congress disallowed creditor attorney’s fees because it recognized that “[t]he threat of litigation over this exception to discharge and its attendant costs are often enough to induce the debtor to settle for a reduced sum....”[52]
Simply stated, the exception for contract attorney’s fees that the majority recognizes today swallows the rule established by Congress. Transouth is not entitled to attorney’s fees under section 523.

. H.R.Rep. No. 595, 95th Cong., 1st Sess. 131, reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 6092.

. Moore v. Charlotte Mecklenburg Bd. of Educ., 402 U.S. 47, 48, 91 S.Ct. 1292, 1293, 28 L.Ed.2d 590 (1971).

. Tribe, American Constitutional Law, “Collusive Suits," § 3-12, at 94 (2d ed. 1988).

. Kirkland v. New York State Dept. of Correctional Servs., 48 Empl.Prac.Dec. (CCH) ¶ 38,631, 1988 WL 108485 (S.D.N.Y.1988) (citing Lord v. Veazie, 8 How. (49 U.S.) 251, 12 L.Ed. 1067 (1850)).

. Moore v. Charlotte-Mecklenburg Bd. of Educ., 402 U.S. 47, 48, 91 S.Ct. 1292, 1293, 28 L.Ed.2d 590 (1971).

. O'Shea v. Littleton, 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974) (quoting Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962)).

. Flast v. Cohen, 392 U.S. 83, 95, 88 S.Ct. 1942, 1950, 20 L.Ed.2d 947 (1968).

. 8 How. (49 U.S.) 251, 12 L.Ed. 1067 (1850).

. 8 How. (49 U.S.) at 255.

. 319 U.S. 302, 63 S.Ct. 1075, 87 L.Ed. 1413 (1943).

. Id. at 305, 63 S.Ct. at 1076.

. See, e.g., Evers v. Dwyer, 358 U.S. 202, 79 S.Ct. 178, 3 L.Ed.2d 222 (1958) (controversy was presented despite fact that only purpose of black plaintiff in boarding bus and refusing to go to back section was to institute litigation).

. Wright, Miller, & Cooper, Federal Practice and Procedure, § 3530, at 336.

. Id.

. See abo Granfield v. Catholic Univ., 530 F.2d 1035, 1045 (D.C.Cir.), cert. denied, 429 U.S. 821, 97 S.Ct. 68, 50 L.Ed.2d 81 (1976) (“Appellants, rather than conceding the lack of dispute, have, in fact, created legal theories leading to the relief they desire. Nevertheless, it is clear that, although appellants purport to raise Establishment issues, they are devoid of a genuine, undeviating and wholehearted contrariety to the establishment of a religion at the University, insofar as it may be accomplished by a continuation of government aid to the institution.”); cf. Poe v. Ullman, 367 U.S. 497, 501, 81 S.Ct. 1752, 1754, 6 L.Ed.2d 989 (1961) ("Formal agreement between parties [that Ullman intended to prosecute violation of Connecticut law on contraceptive use] that collides with plausibility is too fragile a foundation for indulging in constitutional adjudication.”).

. 571 F.2d 149, 150 n. 3 (3d Cir.1978).

. Id. at 150 n. 3.

. Lord v. Veazie, 8 How. (49 U.S.) 251, 12 L.Ed. 1067 (1850); see also, Fenner v. Continental Diving Serv., Inc., 543 F.2d 1113 (5th Cir. 1976) (court refused to consider questions presented where, following institution of genuine personal injury action, parties settled, leaving one party in control of litigation which would establish principles adversely affecting nonparties).

. See, e.g., In re Martin, 761 F.2d 1163 (6th Cir.1985).

. United States v. International Union United Automobile, Aircraft and Agricultural Implement Workers (UAW-CIO), 352 U.S. 567, 592, 77 S.Ct. 529, 542, 1 L.Ed.2d 563 (1957).

. Id., 77 S.Ct. at 541-42.

. Cf. Maria Santiago v. Corporación de Renova-cion Urbana y Vivienda de Puerto Rico, 554 F.2d 1210, 1212-13 (1st Cir.1977) (invoking Article 111 Policy aSainst rendering advisory opinion to fvoid deciding a question that was unnecessary ln PractIcal terms).

. H.R.Rep. No. 595, 95th Cong., 1st Sess. 131, reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 6092.

. Id. (emphasis added).

. National Collection Agency, Inc. v. Trahan, 624 F.2d 906, 907 (9th Cir.1980).

. 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979).

. Id. at 136, 99 S.Ct. at 2211-12.

. 624 F.2d 908 (9th Cir.1980).

. Id. at 910; accord In re Barr, 54 B.R. 922, 924 (D.Ore.1984).

. 12 B.R. 363, 368 (Bankr.M.D.Tenn.1981) (citing H.R.Rep. No. 595, 95th Cong., 1st Sess. 363 (1977)). The court there, however, did not reach, specifically, the question whether compensation would include attorney's fees, as such fees were not requested.

. 8 B.R. 57, 58 (Bankr.S.D.Ind.1980).

. 72 B.R. 300 (Bankr.M.D.Fla.1987).

. 11 U.S.C. § 101(11).

. 11 U.S.C. § 101(4)(A).

. See H.R.Rep. No. 595, 95th Cong., 1st Sess 131, reprinted in 1978 U.S.Code Cong. & Admin. News 5787, 6092.

. 42 B.R. 456, 462 (Bankr.S.D.N.Y.1984).

. Id. at 461.

. Opinion, slip opinion at 3471 (citing Fleisch-mann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 717, 87 S.Ct. 1404, 1407, 18 L.Ed.2d 475 (1967); In re Martin, 761 F.2d 1163, 1168 (6th Cir.1985); Nat Harrison Assoc., Inc. v. Gulf States Utilities Co., 491 F.2d 578, 588-89 (5th Cir.1974)).

. See supra note 38 (citing cases).

. The sixth circuit, in Martin, appears to be the only other court of appeals to have addressed this issue.

. 278 U.S. 149, 154, 49 S.Ct. 84, 85, 73 L.Ed. 236 (1928).

. 761 F.2d 1163, 1168 (6th Cir.1985).

. 278 U.S. at 154, 49 S.Ct. at 85-86.

. Id. at 154, 49 S.Ct. at 85.

. Id. at 153, 49 S.Ct. at 85.

. 386 U.S. at 717, 87 S.Ct. at 1407.

. In re Woods, 25 B.R. 16 (Bankr.D.Ore.1982).

. Id. at 16, 18.

. Id.

. In re Woods, 25 B.R. 16, 17 (Bankr.D.Ore. 1982).

. Opinion, at 1513.

. H.R.Rep. No. 595, 95th Cong., 1st Sess. 131, reprinted in 1978 U.S.Code Cong. & Admin.News, 5787, 6092.